## Louisville, Henderson & St. Louis Railway Company v. Davis.

(Decided February 3, 1914.)

### Appeal from Henderson Circuit Court.

Carriers—Setting Off Passengers at Stations.—A carrier's duty is not always fulfilled to its passenger when its train is brought

to a stop at the passenger's destination alongside a platform in reasonably safe condition. If it is dark, and the distance from the lower step of the coach to the ground unusual, the carrier's servants should assist the passenger, or at least light his way to the ground.

YEAMAN & YEAMAN, R. A. MILLER, J. R. SKILLMAN and MILLER, SANDIDGE & MALIN for appellant.

W. P. McCLAIN for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On February 24, 1912, appellee, Annie Davis, was a passenger upon one of appellant's passenger trains, en rounte from Owensboro to Baskett, in Henderson County. The train arrived at her destination about nine o'clock at night. Passenger trains on this road were accustomed to take on coal at a coal chute situated on the south side of the railroad, and just east of the station at Baskett. The depot platform was of cinders, and a cinder walk extended along the north side of the track, in an eastwardly direction, for a distance of some two hundred yards from the station building. The distance from the lower step of a passenger coach to the ground is about 13 inches near the station building, but quite a little more than that between the coal chute and the public crossing, to which the cinder walk led. On the night in question, the engineer failed to stop the train immediately at the coal chute, so he backed up an appreciable distance in order to get the tender in position to receive coal from the chute. While the coal was being received, appellee alighted from the train. She testified that when the train first stopped, she started to alight, but was told by the conductor to wait; that after the train backed a little and stopped again, she was invited by the conductor to descend from the train; that he carried her basket out of the car and placed it on the ground; that she followed immediately behind him; that it was very dark; and she expected to alight on the platform near the station building where she had many times before alighted, and where, as has been seen, the distance from the lower step to the ground is about thirteen inches; but, that the distance at the place where she did alight was two and one-half to three feet; and that as she stepped to the ground she wrenched the muscles of her back, hip and leg.

She sued appellant to recover damages for the suffering therefrom resulting. The jury returned a verdict in her favor for four hundred dollars. The railroad company appeals, and seeks a reversal for error in the instructions.

Instructions Nos. 1 and 2 are as follows:

"The court instructs you that it was the duty of defendant's agents in charge of the train upon which plaintiff was riding as a passenger, at the time and place mentioned, to observe the highest degree of care which prudent persons engaged in the same business are accustomed to observe under the same or similar circumstances, to enable the plaintiff to alight in safety from its car at the place of her destination; so, if you shall believe from the evidence that defendant's said agents in charge of said train, failed to use that degree of care to enable plaintiff to so alight in safety, but caused or invited her to alight at an unusual and unsafe place, if it was so, at or near the station mentioned, and that the plaintiff, while using ordinary care for her own safety in leaving said car, if she was using such care, was caused to or did step or fall, to such an extent as to jar and injure the plaintiff, then in that event you should find for the plaintiff and award to her such an amount in damages as will fairly and reasonably compensate her therefor; the measure of her recovery, if you find for her, being such an amount as will fairly and reasonably compensate her for the mental and physical suffering endured by her, if any, as was the direct and proximate result of such injury, if any, as complained of, not exceeding the sum of fifteen hundred dollars, the amount claimed in the petition; but unless you shall so find and believe from the evidence as above required, you should find for the defendant."

No. 2. The court further instructs the jury that if you shall believe from the evidence that the point where plaintiff left the car at the time in question, was a place where passengers were, at times, accustomed to alight, and was a reasonably safe place, if it was for such purpose; or, if you shall believe from the evidence that plaintiff at said time voluntarily left said car at the point she did, and did so with the knowledge, if she had such knowledge, of the conditions at said point, and that she was not alighting on the platform at the station, then in either such event, you should find for the defendant."

Appellant's objection to instruction No. 1 is that under this instruction it was required to furnish an absolutely safe platform; whereas, as it contends, the law only requires it to furnish a reasonably safe platform. But, under instruction 2, the jury was required to find for the defendant if they should believe that the place where the plaintiff alighted from the train was *reasonably safe.* The two instructions should be read together; and when that is done, it will be seen that defendant was not prejudiced by reason of the use of the words "unsafe place" instead of "a place not reasonably safe," in instruction No. 1. The first instruction was in one respect more favorable to appellant than it was entitled to, as it required the jury to believe the place to have been both "unusual" and "unsafe" before finding for the plaintiff, when she was entitled to recover if the place was not reasonably safe, whether it was the usual place to alight or not.

Appellant's objection to instruction No. 2 is that the clause "if it was, for such purpose" following the words, "a reasonably safe place" is very confusing; that it seems to have been the court's idea that the appellant was entitled to a verdict only in case the place where appellee alighted was the place where passengers were at times accustomed to alight, and was a reasonably safe place *which had been provided for that purpose.* But we do not think the instruction subject to this criticism. In instruction No. 1, the jury were required to believe that the place was unusual and unsafe before they could find for the plaintiff; and in No. 2, they were told that they should find for the defendant should they believe that the place where plaintiff alighted was a place where passengers were at times accustomed to alight and was reasonably safe. It was the contention of appellant that the place where appellee alighted was a platform where passengers were accustomed to alight, and that it was a reasonably safe place at which to alight; and the instruction embodied this idea, though perhaps in terms not so apt as might have been used. On the whole, the instructions were not prejudicial to appellant.

Appellant cites the case of C., N. O. & T. P. Ry. Co. v. Gibboney, 124 Ky., 806, 30 R., 1005, 100 S. W., 216, upon the question of its duty in respect to the platform.

But, the negligence here in question is not altogether a failure on the part of appellant to keep its premises in reasonably safe condition; it is also the failure to observe the care which the law requires of a carrier toward its passengers, to enable them to alight from the train in safety. A carrier's duty to its passengers is not always fulfilled when it brings its train to a stop at the passenger's destination, alongside a platform in a reasonably safe condition. If it is dark, and the distance to the ground from the lower step of the coaches is unusual, it is negligence for the carrier's servants to fail to assist the passenger, or at least to light the passenger's way to the ground. It is this negligence that makes the place unsafe. C., N. O. & T. P. Ry. Co. v. Bell, 74 S. W., 700, 25 R., 10.

Judgment affirmed